IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Tonny A. Pitt, ) | |
|    Petitioner, ) | |
| ) | |
| v. ) | 1:20cv1054 (TSE/IDD) |
| ) | |
| Harold W. Clark, ) | |
|    Respondent. ) | |

## MEMORANDUM OPINION

Tonny A. Pitt ("Petitioner" or "Pitt"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his June 1, 2016 convictions in the Circuit Court of the City of Alexandria for three counts of burglary; one count of possession of burglary tools; one felony count and three misdemeanor counts of intentional damage of property; and two counts of petit larceny with intent to sell. Respondent has filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. The petitioner was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) but he has not responded. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the Court has determined that respondent's Motion to Dismiss must be granted, and the petition dismissed with prejudice.

### I. Procedural History

Pitt is detained pursuant to a final order of the Circuit Court for the City of Alexandria dated June 1, 2016. After a bench trial, the circuit court convicted Pitt of three counts of burglary; possession of burglary tools; one felony and three misdemeanor counts of intentional damage of property; and two counts of petit larceny with intent to sell. The circuit court sentenced Pitt to an aggregate sentence of 71 years and 12 months in prison, with all but 10 years suspended. [Dkt. No.

17-1]. A judge of the Court of Appeals of Virginia denied Pitt's petition for appeal by order dated January 25, 2017, and a three-judge panel of that court affirmed that denial on April 21, 2017. [Dkt. No. 17-2 at 1-14]. The Supreme Court of Virginia refused Pitt's petition for appeal on March 26, 2018. [Dkt. No. 17-3 at 1].

On January 29, 2019, Pitt, proceeding pro se, filed a petition for a writ of habeas corpus in the circuit court, which dismissed the petition on June 7, 2019. [Dkt. Nos. 17-4, 17-5]. The Supreme Court of Virginia refused Pitt's petition for appeal on August 5, 2020, finding "no reversible error in the judgment complained of." [Dkt. No. 17-7].

## II. Present Petition and Exhaustion

On September 8, 2020, Pitt timely filed a habeas petition in this Court, in which he alleges the following claims of ineffective assistance of counsel:

(1) Trial counsel failed to consult with "a state forensic psychiatrist expert to assist the defense with investigating and developing the facts surrounding Pitt's history of mental illness where there was evidence in the [presentence investigation] that Pitt had previously been admitted to a mental institution or hospital, and diagnosed with mental illness." [Dkt. No. 1-1 at 3, 11-16];

(2) Trial counsel "failed to conduct an independent investigation of the facts surrounding Pitt's history of mental illness and hospitalization by subpoenaing and reviewing Pitt's mental health records." [Dkt. No. 1-1 at 3, 16-19]; and

(3) "Trial counsel failed to move for, and secure, a psychological evaluation to determine Pitt's competency to stand trial and his mental state at the time of the alleged offenses." [Dkt. No. 1-1 at 3-4, 19-21].

The respondent admits that Pitt has exhausted his claims by presenting them to the Supreme Court of Virginia in his appeal of the circuit court's denial of habeas corpus relief.

## III. Merits Standard of Review

Review of petitioner's claims is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA standard requires federal courts give deference to the state court's merits decision unless the decision was (1) contrary to, or an unreasonable

2

application of, a clearly established United States Supreme Court decision, or (2) based on an unreasonable determination of facts "in light of the record before the state court." Harrington v. Richter, 562 U.S. 86, 100 (2011); see 28 U.S.C. § 2254(d)(2). Under 28 U.S.C. § 2254(e)(1), a federal court must presume a state court's determination of facts is correct unless rebutted by clear and convincing evidence. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (factual issue determined by state court "shall be presumed to be correct"); Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006) ("[t]he required deference encompasses both the state court's legal conclusions and its factual findings"); see also Wood v. Allen, 558 U.S. 290, 300 (2010). ("a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"); Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) ("federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence").

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when a state court correctly identifies the "governing legal principle ... but unreasonably applies that principle to the facts of the ... case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted).[1] In making this assessment, federal courts "look to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

> [T]he United States Supreme Court has increasingly cautioned, AEDPA significantly constrains our review of state court decisions on federal

---

[1] "Only holdings of the Supreme Court issued by the time of the relevant state court decision, and not circuit precedent, can form the basis for habeas relief under Section 2254(d)(1)." Dodson v. Ballard, 800 F. App'x. 171, 176 (4th Cir. 2020) (citing Parker v. Matthews, 567 U.S. 37, 48-49 (2012); Barnes, 751 F.3d at 239). The federal court reviews the "ultimate decision" of the state court, not the specific contents of its reasoning or opinion. Blanton v. Quarterman, 543 F.3d 230, 236 (5th Cir. 2008). The state court need not articulate, or even know, the clearly established Supreme Court law, so long as its reasoning and decision do not contradict such law. See Lenz, 444 F.3d at 307.

3

constitutional claims. We are not at liberty to substitute our judgment for that of the state court on matters of federal constitutional law, even if we believe the state court decision was incorrect. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was *unreasonable* — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (emphasis added); see also Harrington v. Richter, 562 U.S. 86 (2011). The state court decision may be deemed unreasonable "only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents.'" Nevada v. Jackson, [569 U.S. 505, 508-09] (2013) (per curiam) (quoting Harrington, [562 U.S. at 102].

Hurst v. Joyner, 757 F.3d 389, 394 (4th Cir. 2014).

Finally, under the look through doctrine, the detailed ruling of the circuit court in the state habeas corpus proceedings, which was summarily affirmed by the Supreme Court of Virginia, is entitled to deference. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (2001).

### IV. Ineffective Assistance of Counsel

Pitt's claims assert ineffective assistance of trial counsel. The United States Supreme Court established a two-prong test a petitioner must meet to state a claim of in effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner show deficient performance and prejudice. To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance," id. at 690. In making such a determination, a federal habeas court "must be highly deferential" and presume "that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "If counsel's performance is found to have been deficient under the first part of the Strickland standard, to obtain relief the petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012) (quoting Strickland, 466 U.S. at 694);

see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

A trial attorney's tactical decisions deserve a high degree of deference in habeas corpus review, and if there is even a chance that counsel's actions were based on sound tactical judgments, the presumption to that effect has not been overcome. See Darden v. Wainwright, 477 U.S. 168, 186 (1986); Strickland, 466 U.S. at 689; Matthews v. Evatt, 105 F.3d 907, 921 (4th Cir. 1997); see also United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (tactical decisions of trial attorney, if reasonably made, provide no basis for ineffective assistance claim).

The second prong of the Strickland test, the "prejudice" inquiry, requires showing that there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 (emphasis added). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id.

> [T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U.S. 15, 27 (2009) (*per curiam*); Strickland, 466 U.S. at 693. Instead, Strickland asks whether it is "reasonably likely" the result would have been different. Id., at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697. The likelihood of a different result must be substantial, not just conceivable. Id., at 693.

Harrington, 562 U.S. at 111-12. An ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); see also Strickland, 466 U.S. at 697.

The Supreme Court explained the impact of the deferential scope of federal habeas review with respect to claims of ineffective assistance of counsel decided by state courts

applying Strickland in Harrington, 562 U.S. at 101-02. Harrington explained that establishing an error by the state court is insufficient under § 2254, because "[f]or purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. at 101 (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. As the Court succinctly stated, "[i]f this standard is difficult to meet, that is because it was meant to be." Id.

Finally, "[w]hen assessing a Strickland claim through the lens of AEDPA, [this Court's] review is 'doubly deferential.'" Valentino v. Clarke, 972 F.3d 560, 580 (4th Cir. 2020) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)) (citing Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) ("[F]ederal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'")). Habeas relief can only be granted "if the state-court decision unreasonably applied" Strickland. Knowles, 556 U.S. at 122.

In applying Strickland, Harrington stated that a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." 562 U.S. at 102. Habeas relief is appropriate only if "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. The Court noted that, even without § 2254's deference, the Strickland standard "is a most deferential one." Id. at 105; see Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016) (double-deference standard effectively limits federal review "to a determination of 'whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'") (citations omitted); see also Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011) (given "[d]ouble deference ... it will be a rare case in which an ineffective assistance of counsel claim

6

that was denied on the merits in state court is found to merit relief in" federal habeas).

"Under the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard," "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" <u>Knowles</u>, 556 U.S. at 123. "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id.</u> In other words, the double-deference standard effectively limits federal "review to determining whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Valentino</u>, 972 F.3d at 580 (internal quotation marks and citations omitted).

### V. Analysis

Pitt's federal claims of ineffective assistance of trial counsel each concern the allegation that trial counsel was ineffective for failing to investigate Pitt's sanity at the time he committed the crimes and his competency to stand trial. In the state habeas proceedings, the circuit court held that Pitt's claims were "premised on a fundamental misunderstanding of Virginia law" as to how a defendant's mental health may be used as a defense and that because Pitt had failed to demonstrate that he was legally insane at the time of he committed the crime, he had failed to satisfy either prong of the <u>Strickland</u> test. [Dkt. No. 17-5 at 5-8]. The circuit court noted that under Virginia law "evidence of a criminal defendant's mental health at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt" [<u>Id.</u> at 5] (citing <u>Stamper v. Commonwealth</u>, 324 S.E.2d 682, 688 (Va. 1985)), and noted that Virginia only recognizes two tests whereby "an accused can establish criminal insanity, the M'Naghten Rule and the irresistible impulse doctrine," and that under either test Pitt bore "the burden of proving that he was insane at the time of the offense." [<u>Id.</u> at 6] (citing <u>Bennett v. Commonwealth</u>, 511 S.E.2d

7

439, 446-47 (Va. Ct. App. 1999); Vann v. Commonwealth, 544 S.E.2d 879, 882-83 (Va. Ct. App. 2001)).

> The M'Naghten Rule requires the defendant to prove that, because of a disease of the mind, he either did not know the nature and quality of his act or did not know that the act was wrong. See Price v. Commonwealth, 228 Va. 452, 457, 323 S.E.2d 106, 108-09 (1984).
>
> ****
>
> The irresistible impulse defense is available when the accused's mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act. Bennett, 29 Va. App. at 277, 511 S.E.2d at 447 (quotation marks omitted). Impulsivity is the essence of this definition of insanity; planning or deliberative conduct is inconsistent with the defense. See Vann, 35 Va. App. at 314, 544 S.E.2d at 883.

[Dkt. No. 17-5 at 6].

The circuit court then noted that Pitt had not alleged the type of insanity he allegedly suffered from "much less demonstrated, that he was legally insane at the time of the offense," and summarized Pitt's three claims:

- that trial counsel should have investigated "Pitt's history of mental illness, diagnoses, hospitalizations; tr[o]uble[d] childhood; suicide attempts[;] and the physical and sexual abuse that Pitt has suffered at the hands of a friend of the family when he was juvenile;"
- that trial counsel should have "procured a state forensic psychiatrist to assist" in this investigation; and
- that trial counsel should have should have moved for a psychological evaluation to determine his competency to stand trial and his mental state at the time of the offenses.

[Dkt. No. 17-5 at 6-7]. The circuit court found that Pitt had failed to state a claim of ineffective assistance of counsel under either prong of Strickland v. Washington, and dismissed all three claims finding "that Pitt [had] offered no evidence that his mental health at the time of the offense had caused him "not to know the nature and quality of the act he was doing, or if he did know it, he did not know what he was doing was wrong," and that Pitt's "failure to proffer to proffer was fatal to his claim." [Dkt. No. 17-5 at 7] (quoting White v. Commonwealth, 636

8

S.E.2d 353, 356 (Va. 2006) (discussing what a defendant must show to claim insanity as a defense); citing Morva v. Warden of the Sussex I State Prison, 741 S.E.2d 781, 789 (Va. 2013) (rejecting the petitioner's claim that his attorney unreasonably failed to investigate and present mitigation testimony where the petitioner "fail[ed] to proffer an affidavit from [the potential witness] to verify that he would have testified" as the petitioner claimed he would have) (emphasis added); Sigmon v. Dir. of the Dep't of Corr., 739 S.E.2d 905, 910 (Va. 2013) (holding that the petitioner had failed to prove Strickland prejudice because he had failed to provide affidavits or other evidence to demonstrate what testimony certain "witnesses would have provided if counsel had interviewed and subpoenaed them to testify at trial"); Muhammad v. Warden of the Sussex I State Prison, 646 S.E.2d 182, 195 (Va. 2007) (holding the petitioner's failure to proffer affidavits regarding the testimony a witness would have offered was fatal to his Strickland claims); Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding that the "great failing of the appellant on his claim that other evidence should have been presented ... is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called")).

Turning to the record, the circuit court found, in addition to the failure to proffer, that Pitt's statements during his criminal proceedings did not demonstrate that he was either insane at the time of his offenses or incompetent to stand trial and supported its conclusion with a discussion of the record.

> Pitt did not testify at trial, but he spoke at length at the sentencing hearing and at no time did he ask for leniency because he was not sane at the time he committed his many offenses. Pitt stated that he had read the victim impact statements and he apologized that he [had] made his victims feel unsafe in their homes. He stated that he was "sincerely sorry" and claimed that he had "no malicious intent." He

9

>  also offered to this Court detailed "business plans" to demonstrate that he would be "a productive citizen of society" when ... released from incarceration. In fact, he said he did not want to use excuses like his "past" or the fact that he was a "troubled teen" as "crutches."

[Id.]. The circuit court found

> that Pitt's sentencing hearing testimony did not demonstrate (and Pitt does not assert in his petition) that he did not appreciate the nature of his actions, did not know right from wrong, or that he had an uncontrollable impulse. As such, Pitt ha[d] failed to show that trial counsel was unreasonable in not investigating his mental health, obtaining expert assistance, or pursuing a mental health evaluation or that he was prejudiced by trial counsel's decision to forgo these steps.
>
> Pitt's unsupported allegation that he was prejudiced by trial counsel's alleged ineffective assistance is not sufficient to warrant relief. Because Pitt has failed to satisfy either prong of the Strickland test, this Court dismisses Claims 14(A), 14(B), and 14(C).

[Id. at 8].[2] The circuit court's conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Pitt's claims will be dismissed to the extent they fault trial counsel for failing to investigate an insanity defense and obtain the services of a forensic psychiatric expert to demonstrate that Pitt was insane at the time he committed the offenses.

Pitt also argues that trial counsel was ineffective for failing to seek an evaluation to determine if Pitt was competent to stand trial. The state habeas court rejected this claim because Pitt had failed to demonstrate that trial counsel had reason to believe he was *not* competent, and

---

[2] The Court notes that the testimony at trial is replete with evidence of premeditation and consciousness of guilt: Pitt broke into homes on August 7, and 14, 2015 and then pawned items stolen from each residence later the same day. (4/7/16 T. at 9-10, 33-34, 42-43, 51-52, 75); he covered his face while inside a home with surveillance cameras and fled the home after an audible alarm was activated (2/6/16 T. at 89-90); the video surveillance showed that Pitt was wearing gloves, had armed himself with a knife, which was in his hand as he moved about the house, and that Pitt was detained shortly after the alarm was activated at an address across the street from the home with the surveillance camera and Pitt had black gloves and a knife on his person at that time (4/6/16 T. at 80-83, 88-89, 131-33, 136); Pitt waived his Miranda rights and spoke with the detectives for over 60 minutes (3/17/16 T. at 38-42); Pitt admitted he entered the home with the surveillance cameras but stated he did so only to check on the safety of the residents — which was proven to be false by the surveillance video that showed he was wearing gloves, holding a knife, and moving through the house and going up the stairs, and that he left only after the alarm was activated (4/6/16 T. at 176-77); after his false explanation for why he entered the home with the surveillance cameras, the detectives told Pitt they had him on video, and the detectives took a short break—right after the detectives left the room, Pitt was recorded as saying "F***, the got my s***." (4/6/16 T. at 171).

he had failed to show that he was prejudiced by trial counsel's actions. [Dkt. No. 17-5 at 9-10]. The state habeas court discussed the legal principles and then applied it by reference to the record.

> In determining whether a defendant is competent to stand trial, the question is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (*per curiam*).
>
> When determining competency, "'[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'" Beck v. Angelone, 261 F.3d 377, 388 (4th Cir. 2001) (citing Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000)). Moreover, "'neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.'" Id. (citing Burket, 208 F.3d at 192). Finally, "the fact that the petitioner has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial.'" Id. (citing Burket, 208 F.3d at 192).

The circuit court then began to apply the factors discussed in Burket – that Pitt "acted in a manner exhibiting competence, " and his actions did not lead either his counsel or the court to question his competency and held

> that Pitt's coherent and appropriate responses to all questions pre-trial and during the sentencing proceedings is "strong evidence" that he was competent to stand trial. See Carriger v. Stewart, 95 F.3d 755, 764 n.20 (9th Cir. 1996), vacated on other grounds, 132 F.3d 463 (4th Cir. 1997) (coherence of petitioner's testimony showed that he was competent to stand trial). Throughout the pre-trial colloquy his replies to this Court's questions were "clear and responsive." See Beck, 261 F.3d at 388.
>
> Another probative factor is the absence of any behavior on the part of Pitt that would lead trial counsel to question his competency. Id. (citing Burket, 208 F.3d at 192-93 (that counsel did not raise the issue of competency provided powerful evidence that petitioner was competent)). In Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991), the court placed great emphasis on the fact that counsel concluded that the prisoner was competent. The court said, "[W]hile the opinion of Hernandez's counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings." See also Barfield v. Woodward, 748 F.2d 844, 851 (4th Cir. 1984) (trial counsel's affidavit and transcripts of trial indication prisoner's understanding clearly indicated legal competency).

11

The circuit concluded its analysis by noting, as with the claims involving counsel's failure to investigate his insanity at the time of the offense, that Pitt had

> not put forth any evidence showing he was incompetent to stand trial or assist in his defense. Without such evidence, he cannot prevail. See Beck, 261 F.3d at 390 91 (finding evidence that Beck "has a fairly severe learning disability with an IQ in the low average range" was not sufficient to show the petitioner was incompetent when he entered his guilty plea). This failure to offer evidence that the petitioner was actually incompetent at the time of his trial is fatal to his claims. See id.; see also Muhammad, 274 Va. at 18, 646 S.E.2d at 195 (barring claim under Strickland where Muhammad "failed to articulate any factual basis" upon which the court could conclude he was prejudiced).

[Dkt. No. 17-5 at 8-9].[3] The circuit court's findings were not based on an unreasonable determination of the facts, and its conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Pitt's claim that he was prejudiced by trial counsel's allegedly unreasonable failure to investigate his competence to stand trial will be dismissed.

## VI. Conclusion

For the foregoing reasons, the motion to dismiss the petition must be granted and the petition must be dismissed with prejudice and an appropriate Order shall issue.[4]

Entered this 25th day of May, 2021.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

---

[3] See 4/6/16 Tr. at 12-14 (plea colloquy); 5/19/16 Tr. at 22-25 (allocution). The sentencing proceeding also refers to Pitt's participation in numerous programs at the jail and that he prepared a business plan for himself if released. Pitt was also conscious at sentencing that he had additional sentencing events due to parole and probation violation proceedings. The record has a substantial basis upon which the circuit court could conclude that Pitt had a "rational understanding" and a "rational as well as factual understanding of the proceedings against him," that he had been able to assist consul in his defense, and that he acted in a "manner exhibiting competence." See, supra at 10-11.

[4] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.